1  Barbara A. Rohr (SBN 273353)
2  Benjamin Heikali (SBN 307466)
   **FARUQI & FARUQI, LLP**
3  10866 Wilshire Boulevard, Suite 1470
   Los Angeles, CA 90024
4  Telephone: (424) 256-2884
   Facsimile: (424) 256-2885
5  E-mail: brohr@faruqilaw.com
          bheikali@faruqilaw.com
6
   *Attorneys for Plaintiff Sandy Hafer*
7

8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  SANDY HAFER, individually and on behalf of all others similarly situated,<br><br>11<br><br>12                    Plaintiff,<br><br>13<br><br>14                    v.<br><br>15<br>NESTLÉ U.S.A., INC.<br>16<br>                    Defendant.<br>17<br>18<br>19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | Case No.:  2:17-cv-00034<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violation of California Civil Code §1750, *et seq.***<br><br>2. **Violation of California Business and Professions Code § 17200, *et seq.***<br><br>3. **Violation of California Business and Professions Code § 17500, *et seq.***<br><br>4. **Breach of Implied Warranty**<br><br>5. **Common Law Fraud**<br><br>6. **Intentional Misrepresentation**<br><br>7. **Negligent Misrepresentation**<br><br>8. **Breach of Contract**<br><br>9. **Quasi-Contract/Unjust Enrichment/Restitution**<br><br>**JURY TRIAL DEMANDED** |

27
28
                    **CLASS ACTION COMPLAINT**

Plaintiff Sandy Hafer ("Plaintiff") by and through her counsel, brings this Class Action Complaint against Defendant Nestlé U.S.A., Inc. ("Nestlé" or "Defendant"), on behalf of herself and all others similarly situated, and alleges upon personal knowledge as to her own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## <u>NATURE OF THE ACTION</u>

1.      Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendant, based on Defendant's misleading business practices with respect to the packaging and sale of its box packaged Raisinets® brand products, including Nestlé Milk Chocolate Raisinets and Nestlé Dark Chocolate Raisinets (referred to individually as "Product" and collectively as the "Products").[1]

2.      At all relevant times, Defendant has packaged and sold the Products in opaque box packaging that conceals from consumers the amount of Raisinets candies inside the box packaging.  The Products' packaging leads the reasonable consumer to believe he or she is purchasing a box full of Raisinets candies.

3.      In reality, the Products are uniformly under-filled—approximately only 60% of each of the Products' packaging is filled with Raisinets candies.

4.      Unbeknownst to consumers, who cannot see the contents inside the Products' packaging at the time of purchase, approximately 40% each Products' packaging is non-functional slack-fill — empty space which serves no functional purpose under the law.

5.      Non-functional slack-fill, like the type employed by Defendant, allows Defendant to reduce its food product costs to the detriment of unwitting customers, who are not receiving the full benefit of their bargain.

6.      Plaintiff and others have reasonably relied on Defendant's deceptive packaging in purchasing the Products, believing that the Products would be full of

---

[1] Depicted, *infra*, in paragraph 15.

2

<strong>CLASS ACTION COMPLAINT</strong>

Raisinets candies.  Had Plaintiff and other consumers known that the Products were not full of Raisinets candies, they would not have purchased the Products or would have paid significantly less for the Products.    Therefore, Plaintiff and other consumers have suffered injury in fact as a result of Defendant's deceptive practices.

7.    Plaintiff brings this class action lawsuit on behalf of herself and all others similarly situated.  Plaintiff seeks to represent a Nationwide Class, a California Subclass, and a California Consumer Subclass (defined *infra* in paragraphs 34-36) (together referred to as "Classes").

8.    Plaintiff is seeking damages, restitution, declaratory and injunctive relief, and all other remedies this court deems appropriate.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total at least thousands of class members, and are citizens of states different from the state of Defendant.

10.    This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California or otherwise intentionally did avail itself of the markets within California, through its sale of the Products to California consumers.

11.    Venue is proper in this District pursuant to 28 U.S.C. 1391(a)(1) because Defendant regularly conducts business throughout this District, and a substantial part of the events and/or omissions giving rise to this action occurred in this District.

## PARTIES

12.    Plaintiff Sandy Hafer is a citizen of California, residing within this District.  In 2016, Ms. Hafer purchased the boxed packaged Nestlé´ Dark Chocolate

**CLASS ACTION COMPLAINT**

1  Raisinets from Ralphs in this District. Ms. Hafer purchased the Nestle´ Dark
2  Chocolate Raisinets, relying on the size and shape of the Product's box packaging,
3  believing that the Product would be full of Raisinets.  However, the Nestle´ Dark
4  Chocolate Raisinets Ms. Hafer purchased contained approximately 40% empty space.
5  Ms. Hafer would not have purchased the Product or would have paid significantly
6  less for the Product had she known that the package was only approximately 60% full
7  of Raisinets.  Ms. Hafer therefore suffered injury in fact and lost money as a result of
8  Defendant's misleading, false, unfair, and fraudulent practices, as described herein.

9      13.    Defendant Nestle´ U.S.A., Inc. is a Delaware corporation with its
10 principle executive offices located at 800 North Brand Boulevard, Glendale,
11 California.  Nestle´ U.S.A., Inc., directly or through its agents, parent company,
12 related entities, and/or subsidiaries, produces, manufactures, packages, labels,
13 distributes, markets, advertises and sells the Products nationwide, including in
14 California.  Nestle´ U.S.A., Inc., directly or through its agents, parent company,
15 related entities and/or subsidiaries, has also maintained substantial production,
16 manufacturing, packaging, labeling, distribution, marketing, advertising and/or sales
17 operations in this District.  Including, but not limited to, a sales office in Brea,
18 California and distribution center in Mira Loma, California.

19              **FACTUAL ALLEGATIONS**
20 **A.    Background**
21     14.    At all relevant times, Defendant has manufactured, packaged, labeled,
22 distributed, marketed, advertised, and sold the Products across California and the
23 United States.  The Products are sold at grocery chains, convenience stores, and other
24 retail outlets including, but not limited to, Wal-Mart, CVS Pharmacy, Pavilions,
25 Walgreens, Rite Aid Pharmacy, Ralphs, Target, Amazon.com, CVS.com and
26 Walmart.com.

27     15.    The Products are sold in the following varieties:
28

4

**CLASS ACTION COMPLAINT**

1

2

a. Nestlé´ Milk Chocolate Raisinets :[2]



b. Nestlé´ Dark Chocolate Raisinets: [3]



16.     All Products' packages have the same dimensions (0.6 inches by 6.3

[2] https://www.walmart.com/ip/Raisinets-Chocolate-Covered-On-The-Go-Raisins-3.5-Oz/15240678 (last visited 12/30/2016).

[3] https://www.walmart.com/ip/Nestle-Raisinets-Dark-Chocolate-Covered-Raisins-3.5-oz/38323296 (last visited 12/30/2016).

5

**CLASS ACTION COMPLAINT**

inches by 3.2 inches) and can hold the same volume of product.

**B.     Federal Slack-fill Law, Legislative History, and FDA Guidance**

17.     Pursuant to 21 C.F.R. § 100.100:

(a)     A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1)     Protection of the contents of the package;

(2)     The requirements of the machines used for enclosing the contents in such package;

(3)     Unavoidable product settling during shipping and handling;

(4)     The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5)     The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages;

(6)     Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

18.     Furthermore, Congress has recognized that the law preventing misleading packaging is "intended to reach deceptive methods of filling…where the package is only partly filled and, *despite the declaration of quantity of contents on the label,* created the impression that it contains more food than it does." S. Rep. No. 493, 73d Cong., 2d sess. 9 (1934) (emphasis added).

**CLASS ACTION COMPLAINT**

19.    The FDA has also disagreed with the suggestion that net weight statements protect against misleading fill, finding that "the presence of an accurate net weight statement does not eliminate the misbranding…" Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64,123, 64,128 (Dec. 6, 1993) (codified at 21 C.F.R. pt. 100). Moreover, the FDA has emphasized that "[t]o rule that an accurate net weight statement protects against misleading fill would render the prohibition against misleading fill… redundant." *Id.* at 64,129.

**C.    The Products Contain Non-functional Slack-fill Under Federal Law**

20.    Defendant's Products fit squarely within the foregoing anti-non-functional slack-fill provisions promulgated by the FDA.

21.    As depicted in paragraph 15, *supra*, the Products are in opaque containers that have no holes or slits for consumers to even partially view the contents inside. Therefore the Products do "not allow the consumer to fully view its contents." 21 C.F.R. § 100.100(a)

22.    The Products' containers are "filled as to be misleading," because the Products' boxed packaging "contain[] non-functional slack-fill:" a "difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a). In this case, the difference between the Products' maximum capacity and volume of actual Raisinets candies inside is striking. Indeed, at least 40% of Products' packaging volume is empty[4]:

---

[4] In order to more clearly depict the slack-fill employed by Defendant, counsel for Plaintiff has cut open the Products' packaging. No further modifications have been made.

7

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13



14    23.    Furthermore, the slack-fill in the Products is non-functional as it does

15 not fit into any of the safe-harbor provisions promulgated by the FDA:

16
17    (1)    Pursuant to 21 C.F.R § 100.100(a)(1), the slack-fill does not protect the

18    contents inside the Products' packaging.  Raisinets candies are raisins

19    coated with a hard chocolate finish.  Therefore, the Raisinets candies

20    are not susceptible to cracking, breaking, or crumbling like potato chips

21    in a bag would be.  The Raisinets candies are also not sticky due to the

22    chocolate being coated with confectioner's glaze (lac-resin), which

23    protects the candies and makes the candies smooth.  Therefore, any

24    concern for the safety of the contents inside the Products has been or

25    should be alleviated by both the nature of the Raisinets candies.  Any

26    suggestion by Defendant that the Products' roomy box packaging

27    protects the contents inside is inconsistent with Defendant's

28    manufacturing and packaging practices for their other Raisinets

8

**CLASS ACTION COMPLAINT**

products, which are packaged in tightly fitting, flimsy plastic bags.  If anything, if more Raisinets candies were filled into the Products' packaging or the packaging size was reduced to the volume of the candies inside, the contents inside would be protected further, as the candies would be given less room to move around during transport.  Accordingly, the use of smaller packaging or an increase in fill would offer the same, if not more, protection for the contents inside.

(2)    Pursuant to 21 C.F.R § 100.100(a)(2), no packaging or machine enclosure requirements would require that the Products be packaged with only approximately 60% Raisinets candies.

(3)    Pursuant to 21 C.F.R § 100.100(a)(3), the slack-fill is not necessary to accommodate how the Raisinets candies "settle" inside the box. Raisinets candies are not pliable so as to be subject to settling in the Products' packaging.

(4)    Pursuant to 21 C.F.R § 100.100(a)(4), the Products' packaging does not "perform a specific function," such as playing a role in the preparation and consumption of the candies.  The boxed packaging is simply used to hold the candies inside and display information about the Products.

(5)    Pursuant to 21 C.F.R § 100.100(a)(5), the Products are not packaged in a container that is meant to be reused or otherwise used after consumption of the Raisinets candies inside.  As evidenced in paragraph 22, even if Defendant has designed the packaging to allow consumers to reseal the packaging, the resealing mechanism can be implemented in the same manner regardless of the packaging size or the fill of the box.

(6)    Pursuant to 21 C.F.R § 100.100(a)(6), Defendant does have the ability to increase the level of fill or to reduce the size of the Products' packaging. (A) A significant number of additional Raisinets pieces can be added to

**CLASS ACTION COMPLAINT**

the current Products without causing any protrusions or toppling over as shown, *supra*, in paragraph 22 where the box packaging is cut away to reveal approximately 40% empty space. (B) The addition of candies would enhance the weight of the Products and prevent any tipping on shelves or stands.  In the alternative, Defendant can reduce the size of the package as to hold the same amount of candy inside, without any non-functional slack-fill.

**D.    The Products' Packaging is Misleading to Reasonable Consumers**

24.    Defendant's Products' packaging is misleading to reasonable consumers, including Plaintiff and the class members, and only serves the profit maximizing interests of Defendant.

25.    Defendant knows, knew or should have known how the Products are filled and packaged because it and its agents manufacture, fill, and packaged the Products.  Furthermore, the Products are governed by federal regulations that control the packaging of the Products, and therefore Defendant is, was aware, or should have been aware that its Products are not in compliance with federal slack-fill regulations.

26.    Additionally, Defendant knows, knew or should have known that Plaintiff and other consumers did and would rely on the size and style of their packaging in purchasing the Products, and would reasonably believe that the Products' packaging is full of Raisinets candies.

a.    According to Congress, "[c]onsumers develop expectations as to the amount of product they are purchasing based, at least in part, on the *size of the container*."  Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64,123, 64,131 (emphasis added).  Moreover, because "[p]ackages have replaced the salesman," "packaging becomes the 'final salesman' between the manufacturer and the consumer, communicating information about the quantity and quality of product in a container."  *Id.*

**CLASS ACTION COMPLAINT**

b.    Furthermore, according to a peer reviewed journal article, an average consumer spends approximately 12 seconds purchasing a product in-store and approximately 19 seconds purchasing a product online.[5] Furthermore, according to peer reviewed journal article analyzing the effects container size and shape on consumer perception, "[p]ackages that appear larger will be more likely to be purchased."[6]

c.    Moreover, research has consistently demonstrated that consumers rarely read details beyond the final price of the product and, often, not even that.[7]  Consumers often do not consult quantity indications on packages but use alternative methods (e.g., visual impressions of the package size, total package price, or previous purchase experience) to judge product quantity and to calculate product value.[8]

27.    In reasonable reliance on the size and style of the packaging, and believing that the Products would be full of Raisinets, Plaintiff and members of the Classes purchased the Products.

28.    Plaintiff and members of the Classes do not know, did not know, and have no reason to know, that the Products actually contained a significant amount of empty space, lacking Raisinets candies, because the containers are opaque with no view of the contents inside, at the time of purchase.  A reasonable consumer cannot accurately determine the fill of the Products by shaking or squeezing packaging, and is certainly not expected to do so prior to purchasing the Products.

---

[5] C.J. Gobb & W.D. Hoyer, *Direct observation of search behavior in the purchase of two nondurable products*, Psychology & Marketing 2: 161–179 (1985).

[6] Priya Raghubir & Aradhna Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 Journal of Marketing Research, No. 3, 313-326 (1999).

[7] Peter R Dickson & Alan G. Sawyer, *Point of Purchase Behavior and Price Perceptions of Supermarket Shoppers*, Marketing Science Institute Report No. 86-102. Cambridge, MA: Marketing Science Institute (1986).

[8] Omprakesh K. Gupta et al., *Package downsizing: is it ethical?* 21 AI & Society, No. 3, 239-250 (2007).

**CLASS ACTION COMPLAINT**

a.    Research indicates that 90% of consumers make a purchase after only visually examining the front of the packaging but without physically having the product in their hands.[9]

29.    Because the Products do not contain the amount of Raisinets reasonably expected by Plaintiff and consumers, Defendant's uniform practice of filling and packaging the Products in the foregoing manner was and continues to be misleading and deceptive, and cheats consumers.

30.    Each consumer has been exposed to the same or substantially similar deceptive practice as each of the Products (1) contain the same misleading size and style of packaging, and (2) contain approximately 40% non-functional slack-fill.

31.    Plaintiff and other consumers have paid an unlawful premium for the Products.  More specifically, they paid for candies they expected but never received.  Plaintiff and other consumers would have paid significantly less for the Products had they known that the Products were filled with only approximately 60% Raisinets candies.  In the alternative, Plaintiff and other consumers would not have purchased the Products at all had they known that the Products were filled with only approximately 60% Raisinets candies.  Therefore, Plaintiff and other consumers purchasing the Products suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

32.    As a result of its misleading business practice, and the harm caused to Plaintiff and other consumers, Defendant should be enjoined from inadequately filling its packaging of the Products.  Furthermore, Defendant should be required to pay for all damages caused to misled consumers, including Plaintiff.

33.    Despite being misled by Defendant, Plaintiff would likely purchase the Products in the future if the Products were full of Raisinets candies.

---

[9] Jesper Clement, *Visual influence on in-store buying decisions: an eye-track experiment on the visual influence of packaging design*, 23 Journal of Marketing Management, 917−928 (2007).

**CLASS ACTION COMPLAINT**

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the United States, who within the relevant statute of limitations periods, purchased the Products ("Nationwide Class").

35.    Plaintiff also seeks to represent a subclass defined as all California residents, who within the relevant statute of limitations periods, purchased Products ("California Subclass").

36.    Plaintiff also seeks to represent a subclass defined as all California residents, who within the relevant statute of limitations periods, purchased the Products for personal, family, or household purposes ("California Consumer Subclass").

37.    Excluded from the Classes are Defendant, the officers and directors of the Defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest.  Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Classes.  Also excluded from the Classes are persons or entities that purchased the Products for sole purposes of resale.

38.    Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

39.    Plaintiff is a member of all Classes.

40.    Numerosity:  Defendant has sold millions of units of the Products.  The Products are available for sale at grocery chains, convenience stores, and other retail outlets including, but not limited to, Wal-Mart, CVS Pharmacy, Pavilions, Walgreens, Rite Aid Pharmacy, Ralphs, Target, Amazon.com, CVS.com and

**CLASS ACTION COMPLAINT**

Walmart.com.    Accordingly, members of the Classes are so numerous that their individual joinder herein is impractical.    While the precise number of class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

41.    <u>Common Questions Predominate</u>:    Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual class members.    Common legal and factual questions include, but are not limited to, the following: whether the Products' packaging contains non-functional slack-fill and is misleading to a reasonable consumer, and therefore violates various consumer protection statutes and common laws.

42.    <u>Typicality</u>:    Plaintiff's claims are typical of the claims of the Classes she seeks to represent in that Plaintiff and members of the Classes were exposed to Defendant's misleading packaging, purchased the Products relying on the misleading packaging, and suffered losses as a result of such purchases.

43.    <u>Adequacy</u>:    Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the members of the Classes she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.    The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and her counsel.

44.    <u>Superiority</u>:    A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.    The size of each claim is too small to pursue individually and each individual Class member will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of

**CLASS ACTION COMPLAINT**

1  this case.   Individualized litigation also presents a potential for inconsistent or
2  contradictory judgments.   The class action mechanism is designed to remedy harms
3  like this one that are too small in value, although not insignificant, to file individual
4  lawsuits for.

5       45.   This lawsuit is maintainable as a class action under Federal Rule of Civil
6  Procedure 23(b)(2) because Defendant has acted or refused to act on grounds that are
7  generally applicable to the class members, thereby making final injunctive relief
8  appropriate with respect to all Classes.

9       46.   This lawsuit is maintainable as a class action under Federal Rule of Civil
10 Procedure 23(b)(3) because the questions of law and fact common to the members of
11 the Classes predominate over any questions that affect only individual members, and
12 because the class action mechanism is superior to other available methods for the fair
13 and efficient adjudication of the controversy.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, _et seq._**
**(_for the California Consumer Subclass_)**

18      47.   Plaintiff repeats the allegations contained in paragraphs 1-46 above as if
19 fully set forth herein.

20      48.   Plaintiff brings this claim individually and on behalf of the members of
21 the proposed California Consumer Subclass against Defendant.

22      49.   The Products are "goods" within the meaning of Cal. Civ. Code §
23 1761(a), and the purchases of such products by Plaintiff and members of the
24 California Consumer Subclass constitute "transactions" within the meaning of Cal.
25 Civ. Code § 1761(e).

26      50.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or
27 services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

**CLASS ACTION COMPLAINT**

quantities which they do not have . . . ."  By filling and packaging the Products in their current misleading packages, Defendant has represented and continues to represent that the Products have quantities which they do not have.  Therefore, Defendant violates section 1770(a)(5) of the CLRA.

51.  Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By deceitfully filling and packaging the Products, and then intentionally not selling the Products to meet the expectations that they are full of Raisinets candies, Defendant has violated section 1770(a)(9) of the CLRA.

52.   At all relevant times, Defendant has known or reasonably should have known that the Products were not full of Raisinets candies, that the Products instead contain a significant amount of non-functional slack-fill, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the size and style of the package in purchasing the Products.

53.  Plaintiff and members of the California Consumer Subclass have reasonably and justifiably relied on Defendant's misleading, and fraudulent conduct when purchasing the Products.  Moreover, based on the very materiality of Defendant's fraudulent and misleading conduct, reliance on such conduct as a material reason for the decision to purchase the Products may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

54.  Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendant's conduct was misleading and fraudulent.

55.  Under Cal. Civ. Code § 1780(a), Plaintiff and members of the California Consumer Subclass seek damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate for Defendant's violations of the

**CLASS ACTION COMPLAINT**

CLRA. Plaintiff seeks to enjoin Defendant from use of deceptive non-functional slack-fill in its Products.

56.    Pursuant to Cal. Civ. Code § 1782, on November 23, 2016, counsel for Plaintiff mailed a notice and demand letter by certified mail, with return receipt requested, to Defendant. Nestle´ received the notice and demand letter on November 28, 2016.[10] Because Defendant has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after it received the notice and demand letter, Plaintiff is timely filing this Class Action Complaint.

### SECOND CLAIM FOR RELIEF
#### Violation of California's Unfair Competition Law ("UCL"),
#### California Business & Professions Code §§ 17200, *et seq.*
#### (*for the California Subclass and California Consumer Subclass*)

57.    Plaintiff repeats the allegations contained in paragraphs 1-46 above as if fully set forth herein.

58.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

59.    UCL §17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

60.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

61.    Defendant's false and misleading advertising of the Products therefore was and continues to be "unlawful" because it violates 21 C.F.R. § 100.100 and 21 U.S.C. § 343(d), because it contains unlawful slack-fill as detailed above in paragraphs 20-23.

62.    Furthermore, Defendant's conduct also violates the CLRA, California's

---

[10] *See* Exhibit "A."

17
**CLASS ACTION COMPLAINT**

1  False Advertising Law ("FAL"), and other applicable laws as described herein.

2      63.    As a result of Defendant's unlawful business acts and practices,

3  Defendant has unlawfully, unfairly and/or fraudulently obtained money from

4  Plaintiff, and members of both the California Subclass and California Consumer

5  Subclass.

6      64.    Under the UCL, a business act or practice is "unfair" if the Defendant's

7  conduct is substantially injurious to consumers, offends public policy, and is

8  immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such

9  acts or practices are outweighed by the gravity of the harm to the alleged victims.

10     65.    Defendant's conduct was and continues to be of no benefit to purchasers

11  of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers

12  who rely on the size of the Products' packaging.  Creating consumer confusion as to

13  the actual quantity of candy is of no benefit to consumers.  Therefore, Defendant's

14  conduct was and continues to be "unfair."

15     66.    As a result of Defendant's unfair business acts and practices, Defendant

16  has and continues to unfairly obtain money from Plaintiff, and members of both the

17  California Subclass and California Consumer Subclass.

18     67.    Under the UCL, a business act or practice is "fraudulent" if it actually

19  deceives or is likely to deceive members of the consuming public.

20     68.    Defendant's conduct here was and continues to be fraudulent because it

21  has the effect of deceiving consumers into believing that the Products are full of

22  Raisinets candies, when they are not.  Because Defendant misled Plaintiff and

23  members of both the California Subclass and California Consumer Subclass,

24  Defendant's conduct was "fraudulent."

25     69.    As a result of Defendant's fraudulent business acts and practices,

26  Defendant has and continues to fraudulently obtain money from Plaintiff, and

27  members of both the California Subclass and California Consumer Subclass.

28

**CLASS ACTION COMPLAINT**

1    70.    Plaintiff requests that this Court cause Defendant to restore this
2  unlawfully, unfairly, and fraudulently obtained money to Plaintiff, and members of
3  both the California Subclass and California Consumer Subclass, to disgorge the
4  profits Defendant made on these transactions, and to enjoin Defendant from violating
5  the UCL or violating it in the same fashion in the future as discussed herein.
6  Otherwise, Plaintiff, and members of both the California Subclass and California
7  Consumer Subclass, may be irreparably harmed and/or denied an effective and
8  complete remedy if such an order is not granted.

9                        **THIRD CLAIM FOR RELIEF**
10            **Violation of California's False Advertising Law ("FAL"),**
              **California Business & Professions Code §§ 17500, *et seq***
11            ***(for the California Subclass and California Consumer Subclass)***

12    71.    Plaintiff repeats the allegations contained in paragraphs 1-46 above as if
13  fully set forth herein.

14    72.    Plaintiff brings this claim individually and on behalf of the members of
15  the proposed California Subclass and California Consumer Subclass against
16  Defendant.

17    73.    California's FAL makes it "unlawful for any person to make or
18  disseminate or cause to be made or disseminated before the public . . . in any
19  advertising device . . . or in any other manner or means whatever, including over the
20  Internet, any statement, concerning . . . personal property or services professional or
21  otherwise, or performance or disposition thereof, which is untrue or misleading and
22  which is known, or which by the exercise of reasonable care should be known, to be
23  untrue or misleading."

24    74.    Defendant has represented and continues to represent to the public,
25  including Plaintiff and members of both the California Subclass and California
26  Consumer Subclass, through their deceptive packaging, that the Products are full of
27  Raisinets candies. Defendant's representation is misleading because the Products'
28

**CLASS ACTION COMPLAINT**

packaging is at least 40% empty. Because Defendant has disseminated misleading information regarding their Products, and Defendant knows, knew, or should have known through the exercise of reasonable care, that the representation was and continues to be misleading, Defendant violates the FAL.

75.    Furthermore, Defendant knows, knew or should have known through the exercise of reasonable care that such representation was and continues to be unauthorized and misleading.

76.    As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiff and members of both the California Subclass and California Consumer Subclass.

77.    Plaintiff request that this Court cause Defendant to restore this money to Plaintiff and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff and members of both the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**<u>Breach of Implied Warranty</u>**
**<u>California Commercial Code § 2314</u>**
***(for the California Subclass and California Consumer Subclass)***

78.    Plaintiff repeats the allegations contained in paragraphs 1-46 above as if fully set forth herein.

79.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

80.    California Commercial Code § 2314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a

**CLASS ACTION COMPLAINT**

1    merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

2    81.    California Commercial Code § 2314(2) provides that "[g]oods to be

3    merchantable must be at least such as… (e)[a]re adequately contained, packaged, and

4    labeled as the agreement may require." Cal. Com. Code § 2314(2)(e).

5    82.    Defendant is a merchant with respect to the sale of candy products,

6    including the Products here. Therefore, a warranty of merchantability is implied in

7    every contract for sale of the Products to California consumers.

8    83.    By filling and packaging the Products in their current boxes, Defendant

9    made implied promised that the packaging would be full of Raisinets candies. By

10    under-filling the amount of Raisinets candies in the current Products' packaging,

11    Defendant have not "adequately…packaged" the Products as promised. Plaintiff and

12    California consumers did not receive the goods as impliedly warranted by Defendant

13    to be merchantable.

14    84.    Therefore, the Products are not merchantable under California law and

15    Defendant has breached their implied warranty of merchantability in regard to the

16    Products.

17    85.    If Plaintiff and members of both the California Subclass and California

18    Consumer Subclass had known that the Products were not adequately packaged, they

19    would not have purchased the Products, would have purchased less of the products,

20    or would not have been willing to pay the premium price associated with Products.

21    Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and

22    members of both the California Subclass and California Consumer Subclass have

23    suffered injury and deserve to recover all damages afforded under the law.

24

25

26

27

28

21

**CLASS ACTION COMPLAINT**

# FIFTH CLAIM FOR RELIEF
## Common Law Fraud
### (*for the Classes*)

86.    Plaintiff repeats the allegations contained in paragraphs 1-46 above as if fully set forth herein.

87.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

88.    Defendant has willfully, falsely, and knowingly filled and packaged the Products in a manner indicating that the Products are full of Raisinets candies. However, the Products contain only approximately 60% Raisinets candies and instead contain significant amounts of non-functional slack-fill.   Therefore Defendant has made misrepresentations as to the Products.

89.    Defendant's misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because they relate to the quantity of Products the consumer is receiving.

90.    Defendant knew or recklessly disregarded the fact that the Products contained a significant amount of non-functional slack-fill.

91.    Defendant intended and intends that Plaintiff and others consumers rely on these representations, as evidenced by Defendant intentionally manufacturing packaging that is significantly larger than the volume of the contents inside.

92.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

93.    Therefore, as a direct and proximate result of Defendant's fraud, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products,

22

**CLASS ACTION COMPLAINT**

and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
### Intentional Misrepresentation
#### (*for the Classes*)

94.     Plaintiff repeats the allegations contained in paragraphs 1-46 above as if fully set forth herein.

95.     Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

96.     Defendant has filled and packaged the Products in a manner indicating that the Products are full of Raisinets candies.  However, the Products contain only approximately 60% Raisinets candies and instead contain a significant amount of non-functional slack-fill.  Therefore Defendant has made misrepresentations as to the Products.

97.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the quantity of product received by consumers.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

98.     At all relevant times when such misrepresentations were made, Defendant knew that the representations were misleading, or has acted recklessly in making the representations, without regard to the truth.

99.     Defendant intended and intends that Plaintiff and others consumers rely on the size and style of the Products' packaging, as evidenced by Defendant's intentionally manufacturing, marketing, and selling packaging that is significantly larger than the volume of the contents inside.

100.   Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products,

**CLASS ACTION COMPLAINT**

1  and had the correct facts been known, would not have purchased the Products or

2  would not have purchased them at the prices at which they were offered.

3      101.   Therefore, as a direct and proximate result of Defendant's intentional

4  misrepresentations, Plaintiff and members of the Classes have suffered economic

5  losses and other general and specific damages, including but not limited to the

6  amounts paid for the Products, and any interest that would have accrued on those

7  monies, all in an amount to be proven at trial.

8              **SEVENTH CLAIM FOR RELIEF**

9               **Negligent Misrepresentation**

10                  (***for the Classes***)

11     102.   Plaintiff repeats the allegations contained in paragraphs 1-46 above as if

12  fully set forth herein.

13     103.   Plaintiff brings this claim individually and on behalf of the members of

14  the Classes against Defendant.

15     104.   Defendant has filled and packaged the Products in a manner indicating

16  that the Products are full of Raisinets candies.  However, the Products contain only

17  approximately 60% Raisinets candies and instead contain a significant amount of

18  non-functional slack-fill.  Therefore Defendant has made misrepresentations as to the

19  Products.

20     105.   Defendant's misrepresentations regarding the Products are material to a

21  reasonable consumer because they relate to the quantity of product received by the

22  consumer.  A reasonable consumer would attach importance to such representations

23  and would be induced to act thereon in making purchase decisions.

24     106.   At all relevant times when such misrepresentations were made,

25  Defendant knew or has been negligent in not knowing that that the Products are not

26  full of Raisinets candies and instead contain a significant amount of non-functional

27  slack-fill. Defendant has no reasonable grounds for believing its misrepresentation is

28

**CLASS ACTION COMPLAINT**

not false and misleading.

107.    Defendant intended and intends that Plaintiff and others consumers rely on the size and style of the Products' packaging, as evidenced by Defendant's packaging that is significantly larger than the volume of the contents inside.

108.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

109.    Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### Breach of Contract
***(for the Classes)***

110.    Plaintiff repeats the allegations contained in paragraphs 1-46 above as if fully set forth herein.

111.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

112.    In purchasing the Products, Plaintiff and members of the Classes have formed valid contracts that are supported by sufficient consideration, pursuant to which Defendant is obligated to provide Products that are full of Raisinets candies, as deceptively represented by Defendant's packaging.

113.    Defendant has materially breached its contracts with Plaintiff and members of the Classes by selling Products that are not full of Raisinets candies and instead contain a significant amount of non-functional slack-fill.

**CLASS ACTION COMPLAINT**

114.   As a direct and proximate result of Defendant's breaches, Plaintiff and members of the Classes were damaged in that they received products with less value than the amounts paid.  Moreover, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### NINTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
### (*for the Classes*)

115.   Plaintiff repeats the allegations contained in paragraphs 1-46 above as if fully set forth herein.

116.   Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendant.

117.   As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products.  Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant.  Plaintiff and members of the Classes therefore have been induced by Defendant's misleading and false representations about the Products, and paid for them when they would and/or should not have or paid more money to Defendant for the Products than they otherwise would and/or should have paid.

118.   Plaintiff and members of the Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the Classes.

119.   The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendant.

**CLASS ACTION COMPLAINT**

120.   Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

121.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a)   For an order certifying the Nationwide Class, the California Subclass, and the California Consumer Subclass, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of all Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

b)   For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c)   For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

d)   For an order awarding all compensatory and punitive damages, including under the California Consumers Legal Remedies Act on behalf of the California Consumer Subclass, in amounts to be determined by the Court and/or jury;

e)   For prejudgment interest on all amounts awarded;

f)   For interest on the amount of any and all economic losses, at the

27

**CLASS ACTION COMPLAINT**

1  prevailing legal rate;

2  g)  For an order of restitution and all other forms of equitable monetary

3  relief;

4  h)  For injunctive relief as pleaded or as the Court may deem proper;

5  i)  For an order awarding Plaintiff and all Classes their reasonable

6  attorneys' fees, expenses and costs of suit, including as provided by statute such as

7  under California Code of Civil Procedure section 1021.5; and

8  j)  For any other such relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 3, 2017                **FARUQI & FARUQI, LLP**

By: */s/ Barbara A. Rohr*
Barbara A. Rohr, Bar No. 273353
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Telephone: 424.256.2884
Fax: 424.256.2885
E-mail: brohr@faruqilaw.com
        bheikali@faruqilaw.com

*Counsel for Plaintiff Sandy Hafer*

**CLASS ACTION COMPLAINT**

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Sandy Hafer, declare as follows:

1.    I am a Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.    This Class Action Complaint is filed in the proper place for trial because I purchased one of the Products in the Central District of California, and Defendant conducts a substantial amount of business in this District.

3.    In 2016, I purchased the Nestle′ Dark Chocolate Raisinets from Ralphs located in this District, relying on the size and style of the Product packaging.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on December 30, 2016 at Los Angeles, California.

Sandy Hafer